UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Shirley Williams-Jones
13112 Shinnecock Drive
Silver Spring, Maryland 20904
301-890-3187

    Plaintiff

                     CIVIL ACTION NUMBER

    v.

Mary E Peters
Secretary of Transportation
1200 New Jersey Avenue, S.E.
Washington, D.C. 20590

    Defendant

**Serve:**

Associate Director, Compliance Operations Division (S-34)
Departmental Office of Civil Rights
U.S. Department of Transportation
1200 New Jersey Ave. S.E.
W 78-401
Washington, D.C. 20590

Case: 1:08-cv-00884
Assigned To : Urbina, Ricardo M.
Assign. Date : 5/23/2008
Description: Employ. Discrim.

U.S. Attorney for the District of Columbia
501 Third Street, N.W.
Washington, D.C. 20001

Office of the Chief Counsel
Federal Aviation Administration
U.S. Department of Transportation
800 Independence Ave., S.W.
Washington, D.C. 29691

U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530

**FILED**
MAY 23 2008
Clerk, U.S. District and Bankruptcy Courts

## COMPLAINT

Title VII of the Civil Rights Act of 1964, 42 USC § 2000e; The Civil Rights Act of 1991 (Pub. L.

102-166) (CRA); Equal Pay Act of 1963, and the Age Discrimination in Employment Act of 1967.

1

## JURIDICTION AND VENUE

1. This, Court has jurisdiction pursuant to 42 U.S.C. §2000,

2. Plaintiff was at the time when Defendant committed the discrimination, an employee working in the District of Columbia, and is presently working in the District of Columbia. Accordingly, venue properly lies with the United States District Court for the District of Columbia.

3. Plaintiff has exhausted all applicable administrative remedies. A final decision that no discrimination occurred was rendered; and decision was received by me on or about February 27, 2008.[1]

4. Plaintiff **SHIRLEY WILLIAMS-JONES** (hereafter ("Plaintiff") is a citizen of the United States, domiciles and residing in Prince George's County, Maryland. At all times relevant to this Complaint, up to and including present time, is an employee of the U.S. Department of Transportation, Federal Aviation Administration as a Program Manager (FV-343-J), which is equivalent to a 14, demoted from a GS-15, which is equivalent to a FV-K.

5. Defendant Mary E Peters is the Secretary of the U.S. Department of Transportation. At all times relevant to this complaint up to and including the present time, the U.S. Department of Transportation, Federal Aviation Administration was Plaintiff's employer.

---

[1] Plaintiff's mother died in February and plaintiff was out of state.

2

**STATEMENT OF FACTS**

According to an Editorial Commentary on Pay Reform, Federal Personnel Director, Kay Coles James, states that "the **Department of Transportation (Federal Aviation Administration), inequitable pay plan is no model for government**". Director Kay Coles James further states that "In an effort to transform the agency, the agency moved away from the traditional General Schedule pay system and toward pay-for-performance. In doing so, the agency created different sets of rules for employees and did not create an overall pay system to cover all of its employees equitably. Most notably, it capped the salaries of some employees, while exempting others' – doing the same work – from the pay caps. This is because FAA negotiated special arrangements for employees belonging to certain union. Certain unions were allowed to negotiate special terms that gave one group of employees a better deal than others, as in the case at FAA". **(Exhibit 1)**

A GAO report dated February 2003 (GAO-03-156) concluded that there is an inequity in FAA Pay System and that there are different versions of the "pay for performance" system within the FAA. It further states that some employees could be adversely impacted (pay and benefits, including retirement and Thrift Savings Plan (TSP) contributions) by the pay system. The <u>Government Accounting Office (GAO) Highlights</u> dated February 2003, found that FAA's core compensation system remained unimplemented for about one-quarter of the agency's workforce. **(Exhibit II)**

To compensate for err in the compensation model, the agency established a Compensation Committee and arbitrarily changed rules for some employees. The agency changed the series of some employees based on their qualifications rather than the position held which is against the rules and laws of Title 29 CFR 1620. The agency also changed employees from professional series to technical series to reach the desired pay band. This change was done without training, certification and/or without advertising the position. The different set of rules created inequities among employees sitting side by side doing the same work. This inequity impacted retirement, morale and most importantly performance which were the catalyst for changing the pay system. The agency also created supervisory positions without having position(s) for the supervisor to supervise.

The agency did not abide by the pay for performance rules of Administrator, Marion Blackley and Chief Operating Officer (COO), Air Traffic Services, Russ Chew. Their statements to the Transportation and Infrastructure, Subcommittee on Aviation (May 13, 2004) Summer Delays and Efforts to Reform the FAA Air Traffic System was as follows: "There needs to be fewer layers between the people doing the work and the executives in the organization. Even in our largest and most remote field organizations, **we have reduced the number of management layers from eleven to six. In addition, the managerial span of control target has been increased to eight staff employees per manager**". (Exhibit III, page 9)

4

## Methodology for Communicating the Pay Changes and Restructuring of the Organization

In an e-mail dated 11/24/03, the COO of Air Traffic expressed the problems in communication and the fact that many of us would not know where we fit. **Exhibit IV.** In a memo dated 12/18/2003 from the COO of Air Traffic Service, employees were told that a complete activity analysis would be done by Booze Allen (contractor) to determine positions with similarities and to assist in the restructuring. According to the COO, the analysis would also give us a clearer picture of what we do, and determine the best and most efficient place for every activity that people do. Employees were assured by the COO that the activity analysis would be conducted to further ensure fairness. Up until that time, the plaintiff had not been removed or reassigned.

The agency informed employees **through policy** that "Jobs that are utilized in multiple parts of the organization must be treated similarly with respect to base pay opportunities (i.e., the pay range or band for the job **must** be the same in all LOBs/staff Offices employees". **Exhibit V and see affidavits in Exhibit VIII).**

The agencies mislead the employees in communicating the pay for performance rules. Even the union that received the largest benefit considered the core compensation plan a joke. **Exhibit VI** The same rules did not apply to all employees. Affidavits from employees collaborates the plaintiff's claim that the agency operated in an informal and unsystematic manner. **Exhibit VII**

5

*See, e.g., Brock*, 765 F.2d at 1036 (alleged merit system did not justify compensation disparity where it operated in informal and unsystematic manner). Adjustments to series and supervisory roles were carried out on ad hoc subjective basis.

## PROCEDURAL HISTORY

Shirley E. Williams-Jones\ (Plaintiff) was the National Program Manager for Model Work Environment (ATS-9), for the Associate Administrator of Air Traffic Services (Steven Brown) of the Federal Aviation Administration (FAA), and U.S. Department of Transportation. She was hired by the former Associate Administrator of Air Traffic Services, Monte Belger, who later became the Acting Deputy Administrator for the Federal Aviation Administration. She worked at the highest level in the Air Traffic Organization and was given supervisory authority in a management directive because the program that she managed (people, time and resources) was in FAA's Flight Plan and was tied to pay for performance initiative". **Exhibit VIII- page 33 in ATS Performance Plan and affidavits in Exhibit VII.**

She supervised the Air Traffic Model Work Environment Staff (**Exhibit IX and Exhibit VII)** and was considered an "expert" by the agency. **Exhibit X** is an affidavit from the Associate Administrator of Air Traffic Services, Steven Brown. The Deputy of Air Traffic Services (Peter Challan), following the agency's rules, explained to Human Resources (Director,Ventris Gibson) that the plaintiff was considered the "agency's expert" and that her program is at the agency level of accountability and that she was not given credit for her area of responsibility and

6

that the plaintiff appeared to have been demoted as a result of the reorganization. The agency's policy states the following criteria must be met to grant an expert position: **Exhibit XI**

> **(A)** perform under general administrative direction, with very wide latitude for the exercise of independent judgment, work of outstanding difficulty and responsibility along special technical, supervisory, or administrative lines, which has demonstrated leadership and exceptional attainments;
>
> **(B)** serve as head of a major organization within a bureau involving work of comparable level;
>
> **(C)** plan and direct or to plan and execute specialized programs of marked difficulty, responsibility, and national significance, along professional, scientific, technical, administrative, fiscal, or other lines, requiring extended training and experience which has demonstrated . leadership and unusual attainments in professional, scientific, or technical research, practice, or administration, or in administrative, fiscal, or other specialized activities; or
>
> **(D)** perform consulting or other professional, scientific, technical, administrative, fiscal, or other specialized work of equal importance, difficulty, and responsibility, and requiring comparable qualifications.

The plaintiff met all of the requirements listed above which is according to agency policy. The plaintiff was not placed in the K or L (2186 series) band,

therefore, she filed a formal complaint and on January 21, 2003, the Agency accepted the complaint.

The activity analysis started in January 2004, and the plaintiff was interviewed. On April, 14, 2004, before the completion of the analysis, the Director of Acquisition Services (Dennis DeGatano), reassigned the plaintiff with diminished responsibilities and duties to a former peer (that he directed). **Exhibit XII.** The plaintiff was the only one on the list of employees to be reassigned to Dennis DeGatano who had the Model Work Environment responsibility. **See Exhibit XIII.** The plaintiff reported this reassignment to the Attorney on duty at the Office of Federal Operation and was told to add the reassignment to the complaint.

Dennis DeGatano also promoted employees to supervisory positions with dates that coincide with the white females' promotions. The promotion was done without changes in the organizational structure and with less than the supervisory ratio that was required from the COO and the Administrator. The organizations were in total chaos and some Directors took advantage of the situation. The promotion is suspect and did not include additional pay. The date coincides with the white female on the draft on page 11.

On November 3, 2004, the same Director of Acquisition Services, Dennis Degatano), advertised a position for the Directors position (EV-0340-02). The plaintiff applied for the position along with two white females (Pam Foss and Heather Biblow). All three employees, including the plaintiff, were referred to Dennis Degatano as the "best qualified." The same Director of Acquisition

8

Services hired the white female (Pam Foss), whom he had previously detailed to the position and again detailed her to a liaison position to himself and the Director of Personnel for over a year that afforded the female an enormous amount of experience in the position that he advertised. **Exhibit XIV** When he interviewed the plaintiff, he told the plaintiff that, "Pam Foss (white female) just had more experience." Note the duties of Pam Foss, as his executive, which are clearly professional personnel duties. She never left the organization or the position and yet her series changed three times. She was placed in J (340) to K (340) to a technical series (2187-L band), all without competition. **Exhibit XV** shows that Pam Foss was finally hired back into the 340 series, even though she never left the organization. The duties of the 340 series are professional and not technical as in the 2187 duties. The organization is human resource management, not air traffic control.

The Deputy Director of Air Traffic Services (Peter Challan) went to the Director of Acquisition Services, who hired Pam Foss, to explain the plaintiff's position in the organization prior to the reorganization. The Director of Acquisition Services told the plaintiff and the Deputy Director of Air Traffic Services that he realized that the bands had been "stretched." However, he said that he didn't have anything to do with the fact that the plaintiff was placed in the wrong pay band.

9

## COUNT 1

**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964:** Treated differently than others who are similarly situated because she is a member of a specific **race.**

1. Air Traffic Services comprises ¾ of FAA's employees. The Associate Administrator of Air Traffic Services managed seven Executive Directors in Air Traffic, Airway Facilities, Office of Runway Safety, Air Traffic System Requirements Service, Office of System Capacity, Office of Independent Operational Test and Evaluation and Terminal Business Service.

2. The plaintiff worked as a National Program Manager for the Associate Administrator of Air Traffic Services (Steven Brown) who supervised the seven Executive Directors. One of the seven Executive Directors, i.e., The Air Traffic Director supervised Mary Ellen Krauss while another Executive Director was the third-line supervisor of Elizabeth Rand. Pam Foss and Elizabeth Rand served as Deputy Directors of the Resource Management Divisions; Mary Ellen Krauss served as Chief of Staff. Heather Biblow served as a supervisor under Pam Foss in the Labor Management Relations Division. The positions in Air Traffic Services include series in 300, 2100, and 800. Organizationally, the hierarchy for the Plaintiff was at a higher level than any of the white females. **Exhibit XVI.**

3. The plaintiff worked as the National Program Manager for Model Work Environment, supervising the work of Air Traffic Controllers, but was not place in the technical series, supervisory, or the "expert" position. The plaintiff gave

10

| White Females | Original grade | Date of change | Series/Grade | Date of change | Series/Grade | Series/Grade |
|---|---|---|---|---|---|---|
| Pam Foss | FG-0340-15 | 4/23/00 | FV-0340-K | 05-07-00 | FV-2186-L | EV-0340-02 |
| Elizabeth Rand | FG-0340-15 | 4/23/00 | FV-0340-K | 08-26-01 | FV-2186-L | |
| Mary Krauss | FG-0301 | 03-26-00 | FG-2152-15 | 04-23/00 | FV-2152-K | |
| Heather Biblow | FG-2152-15 | 4/23/00 | FG-2152-K | ? | ?FV-2152-L | |
| **Black Female** | Original grade | Date of change | Series/Grade | Date of change | Series/Grade | |
| Shirley Williams-Jones | FG-0343-15 | 4-23-00 | FV-0343-J | No change | No change | |

direction to the Associates Directors and yet the plaintiff was the only one who was not given credit for the level of responsibility and the scope of her duties, nor her expertise. Although the people listed below never changed locations or positions, management decided to change their series which gave them an unfair pay advantage.

4. Mary Ellen Krauss did not supervise any employees and her series as Chief of Staff was consistent with the Director of Air Traffic Services policy until core compensation. She requested a return to the 2152 series (which placed her in a higher band – K), and was granted the return even though there were no changes in the office and it was not a business necessity. There was no salary change to compensate for her supervisory position because it was a bogus job. **Exhibit XVII.**

5. The plaintiff was given supervisory authority as a National Program Manager in a policy signed by all of the Directors of Air Traffic Services. The organization realized the significance of the program (in the Flight Plan), and decided that it was the plaintiff was the only one who could identity the performance targets and metrics for the program. Therefore, the plaintiff was

11

the only one who knew the performance of the Model Work Environment Advocates. The Directors signed a policy straight lining the advocates to the plaintiff. **Exhibit XVIII**

5. The conversion of the plaintiff was done inconsistently with the conversion methodology set forth under core compensation. The grade level of the plaintiff and the four white females before core compensation were comparable. The competition of the plaintiff and two of the white females resulted in all three qualified as "best qualified". The similarities in qualification and job experience and job requirement was the same.

## COUNT II

**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964:** Prohibits discrimination based on **sex** (men and women are treated differently in similar situations).

6. Air Traffic Controllers series (2152) is predominantly white males. To ensure that the Controllers maintained their series, regardless of the work performed, classifiers were required to include "expert level of Knowledge" on positions held by 2152's regardless of the job responsibility. This practice is against rules and regulations of Title V.

7. The Deputy Administrator of FAA (Monty Belger), previously the Associate Administrator of Air Traffic Services, asked all Directors to put positions in Director's offices in the professional series, not in engineering or air traffic series because the positions did not require technical knowledge.

12

8. The plaintiff served in the same job as a controller (2152) prior to receiving the National Program Manager's position. The plaintiff trained the Air Traffic Controller who later became the Model Work Environment/Diversity Advocate for Air Traffic. **Exhibit XVIX** is a memo written by the Director of Air Traffic Services requesting the plaintiff's expertise in Air Traffic Services to assist and train his employee, who was the Air Traffic Model Work Environment/Diversity Advocate.  The plaintiff was later hired by the Associate Director of Air Traffic Services, who is the supervisor of the Air Traffic Director, to manage program for the entire Air Traffic Services' organization.  The Diversity Advocate for the Director wanted to keep her 2152 series, although specialized air traffic was not a job requirement.  The agency allowed her to do so during core compensation.  Therefore, her grade became higher than the plaintiff's who was managing the program for the entire organization.  The misclassification of positions by Human Resources can only be characterized as fraud and abuse.  See affidavits in **Exhibit VIII.** Mary Ellen Krauss, who works in the same office as the Diversity Advocate, series was changed back to 2152 which place her in the K band instead of the J band.  Specialized Air Traffic knowledge was not required for the Chief of Staff (See chart above and note the dates).  There was no one to supervise in the office.  That is the reason her salary did not change.  However, the band change allowed her growth possibilities.  **Exhibit VIII**

9. If "the job determine the series, not the qualification" the practice is contrary to Title V. One should not believe that similar situated /job similarity is

13

determined only by job series and one fact stated in the KSA's (Specialized knowledge of Air Traffic) *Aldrich*, 963 F.2d at 525 (job classification system does not justify compensation disparity unless it is rooted in legitimate business-related differences in work responsibilities and qualifications for the particular positions at issue). Mulhall, 19 F.3d at 594 (fact that comparator had accounting degree and plaintiff did not was irrelevant).

10. It is believed that several white men were placed in "expert" positions, but not the plaintiff.

## COUNT III

**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964:** IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964 (Treat her adversely because of her **age**)

11. Employees at the top of their pay band are age 40 or over. The agency's policy is having a disparate impact on the Plaintiff (over age 40). The Agency's compensation practice is discriminatory in practice. Non-discrimination requirements prohibit "not only overt discrimination but also practices that are fair in form but discriminatory in practice. "Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971). The agency's demotion of the plaintiff is not related to job performance and not consistent with business necessity.

## COUNT III

**Equal Pay Act of 1963:** Different wages and salaries paid to one group of people doing essentially the same work (requiring similar effort, similar skill, similar responsibility and performance under similar working conditions.

14

13. The white females and the plaintiff were at the same grade (GS-15) and in the same series (300) prior to the conversion. The activity analysis was not completed when the arbitrary changes were made to the pay band/series of the white females. No audit or technical requirements were imposed on the white females. Their series were arbitrarily changed several times until the desired grade was achieved.

14. The Associate Administrator of Human Resources and the Director of Acquisition Services discriminated against the plaintiff. The plaintiff performed supervisory duties as signed by policy by the Directors of Air Traffic Services. The conversion of the plaintiff was done inconsistently with the conversion methodology set forth under Core Compensation.

## COUNT V

### IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (REPRISAL)

**Prima facie case of disparate treatment discrimination**

15. The plaintiff states that (1) she is a member of a protected class; (she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.

17. The plaintiff reassignment left her with "significantly different" – and diminished supervisory and programmatic responsibilities. The plaintiff oversaw ¾ (32,000) of the agency's employees, several contract employees and a budget. The plaintiff was responsible for the Air Traffic Organization's Model Work Environment metric in the Agency's Flight Plan. After the reassignment,

the plaintiff worked for a peer who was in an organization with only 4000 employees and worked predominantly on clerical issues. **Loni Czekalski v. Mary E Peters, Secretary of Transportation, No. 05-5221 (No. 02cv01403).**

18. The plaintiff reported to the Assistant Administrator of Air Traffic. After the reassignment, the plaintiff reported to a peer who reported to a Director (Acquisition and Business Services). The plaintiff's job was not eliminated.

19. The Director of Acquisition and Business Services reassigned the plaintiff to a new position with different responsibilities, to work under a peer that the Director supervised. The plaintiff's reassignment was a demotion; resulting from race and reprisal bias on the part of a newly named Director. The same Director advertised a Director of Workforce Services Position, which the plaintiff and two white females applied. The Director had detailed the white female, for almost a year, into the position that he announced. He interviewed the two white females and the plaintiff. The Director informed the plaintiff (at the debriefing) that the white female "just had more experience" and that is why he hired her.

20. The same Director promoted an employee to supervise three administrative employees, even though the policy from the Administrator and the COO stated that the supervisory ratio would be six to eight employees. No changes in the office were made to account for the promotion other than the announcement of core compensation policy. The timing of the promotion of the employee is suspect and coincides with the previous reassignments stated in this complaint.

**WHEREFORE, Plaintiff respectfully prays this Court to:**

A. Enter judgment in favor of "Plaintiff and against Defendant;

B. Aware Plaintiff's full back pay and benefits and to otherwise make her whole;

C. Award Plaintiff compensatory damages for her emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses in the amount to be determined by the jury trial;

E. Award Plaintiff's her reasonable attorneys' fees and all costs and expenses incurred in connection with this action;' and

F. Grant Plaintiff appropriate, additional or alternative relief as is just and proper.

G. Monetary Demand: $700.00 (in addition to the aforementioned compensation).

**JURY DEMAND**

This allegation must be resolved in a jury room. The reassignment was effectively a demotion and resulted from race and gender bias on the part of the agency.

Respectfully Submitted

*[signature]*

Shirley Williams-Jones
Pro Se
13112 Shinnecock Drive
Silver Spring, Maryland 20904

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**SHIRLEY WILLIAMS-JONES**

Plaintiff(s)

vs.                              Civil Case No: **08-884 RMU**

**MARY E. PETERS**

Defendant(s)

## NOTICE REGARDING BULKY EXHIBIT

Pursuant to the procedures for filing documents electronically. This notice serves as notification of bulky notice of exhibitst has been filed in paper form in the Clerk's Office. It is available for public viewing and copying between the hours of 9:00 a.m. and 4:00 p.m., Monday through Friday.

**NANCY MAYER-WHITTINGTON**

Clerk

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS
Shirley Williams-Jones

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS
Mary E Peters, Secretary, Department of Transportation (Federal Aviation Administration), Agency

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT 11001
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Shirley Williams-Jones
13112 Shinnecock Drive
Silver Spring, Maryland 20904
301-890-3187

Case: 1:08-cv-00884
Assigned To : Urbina, Ricardo M.
Assign. Date : 5/23/2008
Description: Employ. Discrim.

*JURY ACTION*

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)   OR   ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

(3)

| ○ G. *Habeas Corpus/* 2255 | ⊙ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⊙ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ $700,000   Check YES only if demanded in complaint
JURY DEMAND:  YES ☒  NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE 5/7/08 / 23   SIGNATURE OF ATTORNEY OF RECORD [signature]

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.